1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   MITCH DAVENPORT, as an            No.  2: 14-cv-00931 JAM DAD
     individual and on behalf of
12   all others similarly
     situated,
13                                     **ORDER DENYING PLAINTIFF'S MOTION
                 Plaintiff,            TO REMAND AND DENYING
14                                     DEFENDANT'S MOTION TO DISMISS**
          v.
15
     THE WENDY'S COMPANY, a
16   foreign corporation, WENDY'S
     RESTAURANTS LLC, a foreign
17   limited liability company,
     WENDY'S INTERNATIONAL, INC.
18   (dba THE WENDY'S RESTAURANT
     SYSTEMS IN THE UNITED
19   STATES), a foreign
     corporation, and DOES 1
20   through 20, inclusive,

21               Defendants.

22

23        This matter is before the Court on Plaintiff Mitch

24   Davenport's ("Plaintiff") Motion to Remand (Doc. #10) and

25   Defendant Wendy's International, Inc.'s ("Defendant") Motion to

26   Dismiss ("Doc. #8) Plaintiff's First Amended Complaint ("FAC")

27   (Doc. #1, Ex. B).  Defendant opposed Plaintiff's motion (Doc.

28   #13) and Plaintiff opposed Defendant's motion (Doc. #12).

                                 1

1   Plaintiff replied (Doc. #14), as did Defendant (Doc. #15).  For

2   the following reasons, Plaintiff's Motion to Remand is DENIED and

3   Defendant's Motion to Dismiss is DENIED.[1]

4

5        I.  FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

6        Plaintiff Davenport is former employee of Defendant Wendy's

7   International, Inc.  FAC ¶ 13.  Defendant is engaged in the

8   business of operating fast food restaurants throughout North

9   America.  FAC ¶ 8.  Plaintiff worked for Defendant as a "salaried

10  General Manager" until July 26, 2013, when he resigned from the

11  company.  FAC ¶ 13.

12       Plaintiff alleges that he and all other salaried General

13  Managers employed by Defendant in California were "routinely

14  required to work in excess of eight (8) hours a day and/or forty

15  (40) hours per week without receiving overtime compensation."

16  FAC ¶ 14.  Plaintiff alleges that all General Managers were

17  "expected and required to work five (5) ten (10) hour shifts per

18  week and generally averaged fifty (50) or more hours per week."

19  FAC ¶ 17.  Plaintiff further alleges that salaried General

20  Managers working for Defendant "consistently spend more than

21  fifty percent (50%) of their working hours performing non-

22  managerial tasks."  FAC ¶ 25.  Accordingly, Plaintiff alleges

23  that he and all other salaried General Managers were "improperly

24  misclassified . . . as exempt from California's overtime laws."

25  FAC ¶ 49.  Plaintiff alleges that Defendant "knew or should have

26

---

27  [1] This motion was determined to be suitable for decision without
    oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28  scheduled for June 4, 2014.

1  known that the salaried General Managers did not qualify as

2  exempt employees and purposely elected not to pay them for their

3  overtime labor." FAC¶ 52.

4      According to Plaintiff, "[d]ue to chronic understaffing,

5  tight restrictions on labor by [Defendant], and meeting

6  [Defendant's] speed of service standards, Plaintiff rarely had

7  time to take an uninterrupted, thirty (30) minute meal period,

8  when working shifts in excess of five (5) hours in duration."

9  FAC ¶ 42.  Plaintiff further alleges that Defendant "failed to

10  keep the records of hours worked by its salaried General Managers

11  as required by California's Wage Orders."  FAC ¶ 51.

12      Plaintiff purports to bring this action on behalf of two

13  classes: (1) "All persons who, at any time during the four years

14  preceding the filing of this Complaint up until the date of entry

15  of judgment after trial, are or were employed at any of

16  [Defendant's] corporately owned fast food restaurants in

17  California as salaried General Managers;" and (2) "All persons

18  who, at any time during the four years preceding the filing of

19  this Complaint up until the date of entry of judgment after

20  trial, are or were employed at any of [Defendant's] corporately

21  owned fast food restaurants in California as salaried General

22  Managers who did not receive an uninterrupted, off-duty thirty

23  (30) minute meal period, for each day in which they worked in

24  excess of five (5) hours." FAC ¶ 1.

25      On August 5, 2013, Plaintiff filed the original Complaint

26  (Doc. #1, Ex. A) in Sacramento County Superior Court.  On

27  September 12, 2013, Plaintiff filed the First Amended Complaint

28  ("FAC") (Doc. #1, Ex. B).  On October 17, 2013, Defendant filed

1   its first Notice of Removal.  District Judge Burrell found that

2   this removal was improper because the amount in controversy

3   necessary for diversity jurisdiction under 28 U.S.C. § 1332(a)

4   was lacking.  On April 15, 2014, Defendant filed its second

5   Notice of Removal (Doc. #1), removing the action to this Court

6   pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of

7   2005 ("CAFA").

8        The FAC includes the following causes of action:

9   (1) "Failure to Pay Overtime Wages" in violation of California

10  Labor Code ("CLC") § 203, § 510, § 1194, and § 1198; (2) "Failure

11  to Provide Meal Breaks" in violation of CLC § 226.7;

12  (3) "Violation of California Labor § 226;" (4) "Violation of

13  Business and Professions Code §§ 17200 and 17203;" and

14  (5) "Violation of Labor Code § 2699(F) for Violations of Labor

15  Code §§ 201-203, 226(A) 226.7, 510, 1194 and 1198 and Penalties

16  pursuant to Labor Code § 2699(A) for violations of Labor Code

17  § 226.3."

18

19                    II.   OPINION

20       A.   Motion to Remand

21            1.   Legal Standard

22       CAFA gives the district courts original jurisdiction in any

23  civil action where: (1) "the matter in controversy exceeds the

24  sum or value of $5,000,000, exclusive of interest and costs,"

25  (2) the number of putative class members is not less than 100

26  persons, and (3) "any member of a class of plaintiffs is a

27  citizen of a State different from any defendant." 28 U.S.C.

28

                          4

1  § 1332(d).  Under CAFA, a removing defendant must prove that

2  these elements are satisfied by the preponderance of the

3  evidence.

4           2.   Discussion

5       In his Motion to Remand, Plaintiff argues that Defendant has

6  "concede[d] that there were not 100 or more class members at the

7  time the complaint and/or FAC were filed."  Motion to Remand

8  ("MTR") at 7.  Plaintiff further argues that the removal was

9  "premised on the incorrect assumption that CAFA diversity

10  jurisdiction can be satisfied if, although lacking at the time of

11  the filing of the Complaint or Amended Complaint, by virtue of

12  the passage of time the number of class members grows to over

13  100."  MTR at 7-8.  Plaintiff maintains that, on a motion to

14  remand, the Court's inquiry is limited to "whether the 100 person

15  requirement necessary for CAFA jurisdiction existed at the time

16  of the filing of Plaintiff's Complaint."  MTR at 9.

17       Defendant responds with two arguments.  First, it disputes

18  Plaintiff's construction of the law, arguing that federal

19  jurisdiction is determined at the time of removal, not the time

20  of filing.  Opp. at 5.  In the alternative, Defendant maintains

21  that "the putative class size has always exceeded 100 – even as

22  of the date of initiation of the action."  Opp. at 2.

23       Defendant has presented uncontested evidence that the CAFA

24  class-size requirement was satisfied at the time the original

25  complaint was filed.  Martha Shannon, a "Legal Manager" for

26  Defendant Wendy's, submitted a declaration stating that "the

27  number of putative class members *at the time this action was*

28  *commenced* . . . exceeded 100 persons."  Shannon Declaration ¶ 5

5

1  (emphasis added).  In making this conclusion, Ms. Shannon

2  reviewed Defendant's HR databases, Oracle and People Soft.

3  Shannon Declaration ¶ 5.  Plaintiff presents no evidence to rebut

4  this testimony, other than Defendant's own statements in the

5  Notice of Removal.  Reply at 1.  The Shannon Declaration is

6  sufficient to satisfy Defendant's burden.  See, e.g., Ray v.

7  Wells Fargo Bank, N.A., 2011 WL 1790123 at *6 (C.D. Cal. May 9,

8  2011) (holding that a sworn declaration is sufficient to meet a

9  removing defendant's burden, and that "there is no need . . . to

10  provide the business records themselves"); Lewis v. Verizon

11  Commc'ns, Inc., 627 F.3d 395, 397 (9th Cir. 2010) (holding that

12  remand was improper where the removing defendant had "supplied an

13  affidavit to show that the potential damages could exceed the

14  jurisdictional amount").

15      Plaintiff's contention that Defendant "conceded" this point

16  in its Notice of Removal is without merit.  MTR at 7.  First,

17  Plaintiff cites no authority for its position that Defendant is

18  bound by representations made in its Notice of Removal.

19  Moreover, neither of Defendant's statements is a clear and

20  definitive admission that the class size was insufficient at the

21  time of filing.  Defendant's statement that the "class size

22  expands over time . . . as Defendant hires persons in this role"

23  and that "[o]ne hundred or more persons now fit with Plaintiff's

24  putative class description" is consistent with Defendant's

25  current position.  Notice of Removal ¶ 13.  More problematic is

26  Defendant's statement that "[s]ubsequent to the prior removal and

27  the prior remand, this action became removable . . . because the

28  class size now meets or exceeds 100 persons[.]"  Notice of

6

Removal ¶ 8.  The clear implication of this statement is that, at the time of the prior removal and remand, the class size did not exceed 100 members.  Nevertheless, this statement stops short of directly making that admission.  Regardless, Plaintiff has not established that such an admission, even if made, would be binding on Defendant for purposes of a motion to remand. Moreover, prior to Plaintiff's motion to remand (filed on May 1, 2014), Defendant clearly communicated its current position to Plaintiff.  In an April 30, 2014 letter to Plaintiff's counsel, Defendant's counsel unambiguously stated that "the number of class members *at the time you commenced the action* exceeded 100 persons[.]"  Kemple Declaration, Ex. D (emphasis added). Accordingly, the Court finds that Defendant has not "conceded" that the number of class members at the time the action was commenced was less than 100 persons.

    The Court does not consider Plaintiff's argument – made for the first time in its reply – that Defendant's removal was untimely.  It is well-established that a party may not raise a new argument in its reply brief.  See, e.g., <u>Harrold v. Experian Info. Solutions, Inc.</u>, 2012 WL 4097708, at *4 n.2 (N.D. Cal. Sept. 17, 2012) (noting that "[s]andbagging with a new legal theory in a reply brief will not be tolerated"); <u>Tovar v. U.S. Postal Serv.</u>, 3 F.3d 1271, 1273 n.3 (9th Cir. 1993) (striking new information from a reply brief, while noting this practice "deprived the [opposing party] of an opportunity to respond"). Prior to filing its motion to remand, Plaintiff had advance notice of Defendant's position that the class size requirement was satisfied "at the time [Plaintiff] commenced the action[.]"

7

1   Kemple Declaration, Ex. D.   Therefore, Plaintiff cannot contend

2   that Defendant has argued this "for the first time in its

3   Opposition to remand."   Reply at 1 (emphasis in original).

4   Accordingly, any argument in Plaintiff's reply brief that the

5   removal was untimely is stricken as improper.   Tovar, 3 F.3d at

6   1273 n.3.   As the Court does not consider Plaintiff's new

7   argument, Defendant's request to file a response to address this

8   new argument (Doc. #17) is unnecessary.   Accordingly, because the

9   Court finds that the number of class members exceeded 100 persons

10   at the time the action was commenced, Plaintiff's Motion to

11   Remand is DENIED.

12          B.   Motion to Dismiss

13                 1.   Failure to Allege Wrongdoing against Individual
                         Plaintiff
14

15          Defendant argues that each of Plaintiff's five causes of

16   action must be dismissed because Plaintiff "offers no allegations

17   of wrongful conduct concerning himself."   Motion to Dismiss

18   ("MTD") at 5 (emphasis removed).   Defendant maintains that the

19   "only allegations specific to Plaintiff Davenport are found in

20   paragraphs 39 through 42 of the FAC[.]"   MTD at 5.   Plaintiff

21   responds by listing the numerous allegations made with regard to

22   "General Managers" employed by Defendant, and noting that that

23   group included Plaintiff.

24          Plaintiff specifically alleges that he "was employed by

25   Defendants as salaried General Manager in California[.]"   FAC

26   ¶ 39.   Elsewhere in the FAC, Plaintiff alleges that "all of

27   [Defendant's] California based salaried General Managers are and

28   were classified as 'exempt' from California's overtime laws[.]"

1    FAC ¶ 17 (emphasis added).  Plaintiff continues to refer to

2    "General Managers" under the subheading "Factual Allegations" in

3    the FAC, rarely referring to Plaintiff individually.  FAC ¶¶ 16-

4    31.  However, given Plaintiff's characterization of himself as a

5    salaried General Manager in California, and given the initial

6    allegation that "all" General Managers were classified as exempt,

7    each factual allegation made with regard to "General Managers"

8    must be read to include Plaintiff.  FAC ¶¶ 17, 39.  Accordingly,

9    Plaintiff has made sufficient factual allegations concerning

10   himself, individually.

11                2.    <u>Failure to Pay Overtime Wages</u>

12        Defendant argues that Plaintiff's first cause of action for

13   failure to pay overtime wages must be dismissed because "not a

14   single instance of overtime is factually alleged as to anyone."

15   MTD at 5.  Defendant also argues that Plaintiff has failed to

16   state a claim because he did not allege that Defendant "suffered

17   or permitted" unpaid overtime.  MTD at 6.  Plaintiff responds

18   that "the law does not require specific instances.  In other

19   words the law does not require a Plaintiff to allege that on July

20   26, 2012 he worked 2.5 hours of overtime."  Opp. at 7.  Plaintiff

21   further argues that he is not required to allege that Defendant

22   suffered and permitted the violations, because "California law,

23   unlike the FLSA, does not contain any language regarding 'suffer

24   and permit.'"  Opp. at 7.

25        Plaintiff does not merely allege that Defendant improperly

26   failed to pay General Managers for overtime work.  Rather,

27   Plaintiff makes the additional allegation that "all of

28   [Defendant's] California based salaried General Managers are/were

                                    9

expected and required to work five (5) ten (10) hour shifts per week and generally averaged fifty (50) or more hours per week." FAC ¶ 17.  This factual allegation distinguishes the present case from those cases relied upon by Defendant, in which plaintiffs made conclusory allegations that merely mimicked the statutory language.  See, e.g., Villegas v. J.P. Morgan Chase & Co., 2009 WL 605833 at *1 (N.D. Cal. Mar. 9, 2009) (granting motion to dismiss where plaintiffs alleged that "the defendants have a policy of not paying members of the class all overtime wages earned"); Acosta v. Yale Club of New York City, 1995 WL 600873 at *4 (S.D.N.Y. Oct. 12, 1995) ("[s]imply stating that Plaintiffs were not paid for overtime work does not sufficiently allege a violation"); Harding v. Time Warner, Inc., 2010 WL 457690 at *4 (S.D. Cal. Jan. 26, 2010) (granting motion to dismiss where the plaintiff alleged that "Defendant ... regularly and repeatedly fail[ed] to compensate Plaintiffs and similarly situated individuals for all hours actually worked").  As Plaintiff has alleged a specific number of hours worked by General Managers each week (50 hours), the present case is analogous to Yuckming Chiu v. Citrix Sys., Inc., in which the plaintiff "alleged that he worked a specific number of hours – between 50 and 60 a week[.]"  Yuckming Chiu v. Citrix Sys., Inc., 2011 WL 6018278 at *4 (C.D. Cal. Nov. 23, 2011).  Accordingly, the Court finds that Plaintiff's allegations are sufficient to state a claim for failure to pay overtime wages.

Moreover, as a number of courts have previously held, the Court finds that "it cannot be the case that a plaintiff must plead specific instances of unpaid overtime before being allowed

1    to proceed to discovery to access the employer's records." <u>Acho</u>

2    <u>v. Cort</u>, 2009 WL 3562472 at *3 (N.D. Cal. Oct. 27, 2009); <u>see</u>

3    <u>also</u>, <u>Muan v. Vitug</u>, 2013 WL 2403596 at *2 (N.D. Cal. May 31,

4    2013) (noting that "[i]t would be unfair to require [the

5    plaintiff] to provide in his complaint a detailed employment

6    record when the law clearly requires the employer, not the

7    employee, to maintain such a log").

8        Furthermore, Plaintiff is not required to allege that

9    Defendant "suffered and permitted" the unpaid overtime

10   violations.  As noted in <u>Washington v. Crab Addison, Inc.</u>, unlike

11   the FLSA, California Labor Code ("CLC") section 510 does not

12   include "suffer and permit" language.  <u>Washington v. Crab</u>

13   <u>Addison, Inc.</u>, 2010 WL 2528963 at *3 (N.D. Cal. June 18, 2010).

14   Therefore the FLSA and section 510 "cannot be subjected to the

15   same analysis."  <u>Id.</u> at *3.  For this reason, Defendant's

16   reliance on <u>Jong v. Kaiser Found. Health Plan, Inc.</u>, 171

17   Cal.Rptr.3d 874 (Cal.Ct.App. 2014) is misplaced.  Although the

18   court in <u>Jong</u> concluded that a plaintiff must establish that an

19   employer has "suffered or permitted" the CLC section 510

20   violation, the court relied entirely on FLSA cases in coming to

21   this conclusion.  <u>Jong</u>, 171 Cal.Rptr.3d at 877-78.  The <u>Jong</u>

22   court expressly noted that "the parties and the trial court

23   assumed the applicability" of FLSA principles in section 510

24   cases, and it therefore declined to "question this basic premise

25   on which all parties . . . proceeded." <u>Jong</u>, 171 Cal.Rptr.3d at

26   877-78.  In the instant case, however, the parties have not

27   assumed the applicability of FLSA standards to a section 510

28   claim, and this Court finds that the absence of "suffer and

1   permit" language in section 510 indicates that Plaintiff need not

2   allege that Defendant "suffered and permitted" the unpaid

3   overtime violations.

4           3.   Failure to Provide Meal Breaks

5        Defendant argues that Plaintiff's second cause of action for

6   failure to provide meal breaks must be dismissed because

7   "Plaintiff's pleading is a classic instance of a formulaic

8   recitation of the elements of a claim that does not state a

9   claim."   MTD at 8 (internal citations and emphasis omitted).

10   Defendant also contends that Plaintiff is required to allege that

11   Defendant expressly ordered him to skip meal breaks.   MTD at 7.

12   Plaintiff responds that his allegations regarding "chronic

13   understaffing, tight restrictions placed on labor [and,] speed of

14   service standards" lay sufficient factual background for his

15   "failure to provide meal breaks" claim.   Opp. at 11.   Plaintiff

16   also argues that, in light of a recent ruling by the California

17   Supreme Court, he is only required to allege that Defendant had a

18   policy of creating incentives to forgo legally protected meal

19   breaks.   Opp. at 11, n.6.

20        Plaintiff alleges that he "rarely had time to take an

21   uninterrupted, thirty (30) minute meal period, when working

22   shifts in excess of five (5) hours," primarily due to "chronic

23   understaffing, tight restrictions placed on labor by Defendants,

24   and meeting Defendants' speed of service standards."   FAC ¶ 42.

25   He further alleges that "extreme pressure" was placed on General

26   Managers to meet the "corporately mandated speed of service

27   standards" and that failure to meet these standards "frequently

28   resulted in salaried General Managers receiving poor performance

reviews, being unable to make bonuses, being demoted,
reprimanded, and even terminated.  FAC ¶ 24.  As a result of this
pressure and "chronic understaffing," Plaintiff alleges that he
"rarely had time" to take mandatory meal breaks."  FAC ¶ 42.
These allegations provide sufficient factual details and
distinguish the present case from those cases relied upon by
Defendant.  See, e.g., Brown v. Wal-Mart Stores, Inc., 2013 WL
1701581 at *5 (N.D. Cal. Apr. 18, 2013) (granting motion to
dismiss where the plaintiffs alleged that the defendant
"pressured, incentivized, and discouraged" employees from taking
meal breaks, but did "not provide *any* facts surrounding these
alleged tactics") (emphasis in original); Bellinghausen v.
Tractor Supply Co., 2013 WL 5090869 at *1 (N.D. Cal. Sept. 13,
2013) (granting motion to dismiss where the plaintiff alleged
that the defendant "failed to provide . . . an uninterrupted meal
period of at least thirty (30) minutes on each day that
[plaintiff] worked five (5) hours or more").

Defendant's citation to Lopez v. Wendy's Int'l, Inc., 2011
WL 6967932 (C.D. Cal. Sept. 19, 2011) is unpersuasive.  MTD at 7-
8.  Lopez purports to make a distinction between "being ordered
to [skip] breaks and being ordered to complete one's assigned
tasks, which results in one skipping breaks."  Id. at *3.
However, subsequent to the Lopez decision, the California Supreme
Court decided Brinker Rest. Corp. v. Superior Court, 53 Cal.4th
1004 (2012).  In Brinker, the court held that "an employer may
not undermine a formal policy of providing meal breaks by
pressuring employees to perform their duties in ways that omit
breaks."  Brinker, 53 Cal.4th at 1040.  Accordingly, Plaintiff's

13

1   allegations that Defendant's staffing and speed of service

2   standards caused him to skip required meal breaks are sufficient

3   to state a claim for "failure to provide meal breaks."  See

4   Fields v. W. Marine Products Inc., 2014 WL 547502 at (N.D. Cal.

5   Feb. 7, 2014) (denying motion to dismiss where "employees were

6   also impeded by the fact that they often worked alone and had no

7   one to run the store had they stopped for a break").

8             4.   Failure to Provide Accurate Wage Statements

9        Defendant seeks dismissal of Plaintiff's third cause of

10  action for failure to provide accurate wage statements on the

11  grounds that Plaintiff has not sufficiently pled an injury

12  resulting from Defendant's failure to provide accurate wage

13  statements. Defendant contends that this claim includes only the

14  "bare conclusion that [Plaintiff] was 'injured' in some unstated

15  way."  MTD at 10.  Plaintiff responds that, in light of a recent

16  statutory amendment to the CLC, the threshold for establishing an

17  injury under section 226(e) is very low.  Opp. at 14.

18       To state a claim under section 226(e) of the CLC, an

19  employee must suffer injury as a result of the intentional

20  failure by his employer to provide an accurate wage statement.

21  However, "the injury requirement is minimal," as indicated by the

22  2013 statutory amendment to section 226(e), which clarifies that

23  "[a]n employee is deemed to suffer injury . . . if the employee

24  cannot promptly and easily determine from the wage statement

25  alone . . . the amount of gross wages or net wages" due to the

26  employee.  Cal. Lab. Code § 226(e)(2); Fields v. W. Marine

27  Products Inc., 2014 WL 547502 at *8 (N.D. Cal. Feb. 7, 2014).

28  Accordingly, an "injury" under section 226(e) includes "the

possibility of not being paid overtime, employee confusion over whether they received all wages owed them, [and] difficulty and expense involved in reconstructing pay records." Elliot v. Spherion Pacific Work, LLC, 572 F.Supp.2d 1169, 1181 (C.D.Cal.2008).  Plaintiff alleges that Defendant "failed to accurately record the start and end times for work performed by the Plaintiff and class members, and failed to provide them with timely and accurate wage and hour statements[.]" FAC ¶ 60.  As another district court has held, "a reasonable inference can be drawn that [Plaintiff], in order to determine how much he should have been paid, will be required to engage in discovery and mathematical computations in an effort to reconstruct the missing information." Schneider v. Space Sys./Loral, Inc., 2012 WL 1980819 at *3 (N.D. Cal. June 1, 2012).  Defendant's reliance on Lopez is therefore unavailing, as it preceded the 2013 statutory amendment to section 226(e).  MTD at 9-10 (citing Lopez v. Wendy's Int'l, Inc., 2011 WL 6967932 (C.D. Cal. Sept. 19, 2011)). Accordingly, Plaintiff has sufficiently alleged an "injury" under section 226(e).

As further discussed below, Plaintiff alleges that the Defendant "purposely" misclassified salaried General Manager employees as exempt, and therefore Plaintiff has sufficiently alleged that the failure to provide accurate wage statements was "knowing and intentional" under section 226(e).  FAC ¶ 52; see Hennighan v. Insphere Ins. Solutions, Inc., 2013 WL 1758934 at *5 (N.D. Cal. Apr. 24, 2013) (holding that "an allegation of purposeful misclassification is required" to satisfy the "knowing and intentional" element in section 226).

1          5.   <u>Waiting Time Penalties</u>

2          Plaintiff's claim for "waiting time" penalties under CLC

3   section 203 ( FAC ¶52 ) must be dismissed, according to

4   Defendant, as "Plaintiff offers no allegations concerning a

5   waiting time penalty claim" and has failed to allege that the

6   failure to pay wages was "willful."  MTD at 10.  Plaintiff

7   responds that his allegation of "purposeful misclassification" is

8   sufficient to support an award under section 203.  Opp. at 16.

9          CLC section 203 provides that, "[i]f an employer willfully

10  fails to pay . . . any wages of an employee who is discharged or

11  who quits, the wages of the employee shall continue as a penalty

12  from the due date thereof at the same rate until paid" for a

13  maximum of 30 days.  Cal. Lab. Code § 203.  An allegation of

14  "deliberately implement[ing] a . . . policy of not paying

15  overtime" is sufficient to satisfy the "willful" requirement of

16  section 203.  <u>Yuckming Chiu v. Citrix Sys., Inc.</u>, 2011 WL 6018278

17  at *5 (C.D. Cal. Nov. 23, 2011).  Section 203 also requires an

18  allegation that "some of the Putative Class members were

19  discharged or quit . . . and have failed to receive the overtime

20  wages due to them."  <u>Yuckming</u>, 2011 WL 6018278 at *5.

21         Plaintiff has alleged that Defendant "knew or should have

22  known that the salaried General Managers did not qualify as

23  exempt employees and purposely elected not to pay them for their

24  overtime labor."  FAC ¶ 52.  Moreover, Plaintiff has alleged that

25  his "employment with Wendy's as a salaried General Manager ended

26  when he resigned from the company effective July 26, 2013."  FAC

27  ¶ 13.  Accordingly, Plaintiff has sufficiently alleged both

28

1   elements of a claim for waiting time penalties under CLC section

2   203.

3          6.   UCL and PAGA Claims

4       Plaintiff's fourth and fifth causes of action are brought

5   under the Unfair Competition Law ("UCL") and Private Attorney

6   General Act ("PAGA"). These claims are derivative of his first

7   three causes of action under the CLC.  As Plaintiff has

8   sufficiently stated a claim for at least one of these causes of

9   action, he has also stated a claim under the UCL and PAGA.  See

10  Cortez v. Purolator Air Filtration Products Co., 23 Cal. 4th 163,

11  178 (2000) (recognizing that "any business act or practice that

12  violates the Labor Code through failure to pay wages is, by

13  definition . . . an unfair business practice" in violation of the

14  UCL); Arias v. Superior Court, 46 Cal. 4th 969, 980 (2009)

15  (noting that an "aggrieved employee" under PAGA may bring suit

16  for violations of the CLC).

17         7.   PAGA Claim as Class Action

18      Defendant argues that Plaintiff's PAGA claim is pled as a

19  "representative" action, rather than a class action, and

20  therefore runs afoul of Article III of the U.S. Constitution.

21  MTD at 11.  Plaintiff responds that his PAGA claim is indeed pled

22  as a class action.  Opp. at 19.  In the alternative, Plaintiff

23  argues that a "representative" PAGA action is not prohibited by

24  Article III.  Opp. at 20.

25      Paragraphs 1 and 32 of the FAC leave no doubt that the

26  entire action is brought as a class action.  FAC ¶¶ 1, 32.  Each

27  of these allegations refers to the action as a "class action" and

28  makes no distinction between the first four causes of action and

1  Plaintiff's fifth cause of action – the PAGA claim.  FAC ¶¶ 1,

2  32.  Plaintiff's reference to "aggrieved employees" rather than

3  "class members" in the fifth cause of action does not change

4  this.  Under PAGA, an "aggrieved employee" is "any person who was

5  employed by the alleged violator and against whom one or more of

6  the alleged violations was committed."  Cal. Lab. Code §2699.

7  Under this definition, and the class definition included in the

8  FAC, "aggrieved employees" and "class members" are one and the

9  same.  FAC ¶ 1.  Every aggrieved employee is a class member and

10  vice versa.  This is consistent with Plaintiff's characterization

11  of "aggrieved employees" as "he and other similarly situated

12  members of the classes, [who] suffered the Labor code violations

13  alleged herein[.]"  FAC ¶ 28.

14      Given that the Court finds that Plaintiff's PAGA claim is

15  being pursued as a class action, it need not reach Defendant's

16  Article III argument.

17          8.   <u>Plaintiff's Class Allegations</u>

18      Defendant urges the Court to strike Plaintiff's class

19  allegations.  MTD at 15.  Defendant maintains that the Court may

20  strike Plaintiff's class allegations, despite the fact that

21  Plaintiff has not yet filed a motion to certify the proposed

22  class, pursuant to Rule 23.  MTD at 16.  Plaintiff responds that

23  Defendant's motion to strike is premature, as "Defendant has not

24  yet filed an answer to the complaint, discovery has not yet

25  commenced, and no motion for class certification has been filed."

26  Opp. at 21.

27      As noted by Plaintiff, courts "routinely deny motions to

28  strike class allegations as premature" when no answer has been

1  filed, discovery has not commenced, and no motion for class

2  certification has been filed.  Opp. at 21; see, e.g., In re Wal-

3  Mart Stores, Inc. Wage & Hour Litig., 505 F. Supp. 2d 609, 616

4  (N.D. Cal. 2007) (holding that the defendant's motions to dismiss

5  or strike the class allegations are premature" where the

6  defendant had not answered the complaint, discovery had not yet

7  commenced, and no motion for class certification had been filed);

8  Fields v. W. Marine Products Inc., 2014 WL 547502 (N.D. Cal. Feb.

9  7, 2014) (denying the defendant's motion to strike class

10  allegations, noting that "such motions are disfavored because a

11  motion for class certification is a more appropriate vehicle" for

12  evaluating compliance with Rule 23); Gillibeau v. City of

13  Richmond, 417 F.2d 426, 432 (9th Cir. 1969) (noting that

14  "compliance with Rule 23 is not to be tested by a motion to

15  dismiss for failure to state a claim").  The above-cited cases

16  are only a sampling of the many instances in which district

17  courts within the Ninth Circuit have determined that motions to

18  strike class allegations are premature under similar

19  circumstances.  See Opp. at 21-22 (string-citing similar cases).

20      Defendant cites a number of cases for the proposition that,

21  "[w]here a plaintiff fails to properly plead the requirements of

22  Rule 23, the class allegations should be stricken, and class

23  discovery may not be commenced."  MTD at 16.  These cases are not

24  persuasive.  Kamm v. California City Dev. Co., 509 F.2d 205, 210

25  (9th Cir. 1975) does not stand for the proposition for which it

26  is cited.  The Kamm court merely approved a district court's

27  dismissal of a class action, upon a finding that that a state

28  court action was a "superior method of resolving the

1  controversy." Kamm, 509 F.2d at 212.  At no point did the Kamm

2  court address the plaintiff's failure to properly plead the

3  requirements of Rule 23.  Similarly, John v. Nat'l Sec. Fire &

4  Cas. Co., 501 F.3d 443, 445 (5th Cir. 2007) does not stand for

5  the proposition for which it is cited.  John merely holds that

6  class allegations may be dismissed if "it is facially apparent

7  from the pleadings that there is no ascertainable class." John,

8  501 F.3d at 445.  Defendant has not argued that is

9  administratively impossible for the Court to "determine whether a

10  particular individual is a member" of the proposed class, so the

11  class is sufficiently "ascertainable." Mauro v. Gen. Motors

12  Corp., 2008 WL 2775004 at *4 (E.D. Cal. July 15, 2008) (holding

13  that a proposed class is sufficiently defined and "ascertainable"

14  if it is "administratively feasible for the court to determine

15  whether a particular individual is a member").  Likewise,

16  Defendant's citation of Mauro v. Gen. Motors Corp., 2008 WL

17  2775004 (E.D. Cal. July 15, 2008) is inapposite.  Indeed, the

18  Mauro court specifically noted that arguments that the proposed

19  class does not meet the requirements of Rule 23 are "more

20  appropriately raised at the class certification stage." Mauro,

21  2008 WL 2775004 at *5.  Finally, Defendant's citation of two out-

22  of-circuit cases is unpersuasive, given the abundance of in-

23  circuit cases cited by Plaintiff.  MTD at 16-17 (citing Stubbs v.

24  McDonald's Corp., 224 F.R.D. 668 (D. Kan. 2004) and Glewwe v.

25  Eastman Kodak Co., 2006 WL 1455476 (W.D.N.Y. May 25, 2006)).

26      Declining to address the class allegations is particularly

27  appropriate here, given the strict limitations on the length of

28  briefs filed in this Court.  The issue of Rule 23 class

1   certification is "better addressed through a fully-briefed class

2   certification hearing," rather than tacked on to the end of an

3   extensive motion to dismiss (as is done here).  <u>Yuckming Chiu v.</u>

4   <u>Citrix Sys., Inc.</u>, 2011 WL 6018278 at *3 (C.D. Cal. Nov. 23,

5   2011).  Forcing Plaintiff to respond to both motions in an

6   abbreviated manner would be unduly prejudicial.  Defendant's

7   arguments regarding commonality, individualized calculation of

8   damages, and the "highly fact-specific stop watch test" can be

9   made if and when Plaintiff moves to certify the proposed class.

10  MTD at 17-20.

11

12                    III.   ORDER

13       For the reasons set forth above, the Court DENIES

14  Plaintiff's Motion to Remand and DENIES Defendant's Motion to

15  Dismiss:

16       IT IS SO ORDERED.

17  Dated: July 25, 2014

18                                   _____
                                     JOHN A. MENDEZ,
19                                   UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28